UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CORNELIUS L. HARRIS,<br>    Plaintiff, | Case No. 1:20-cv-120 |
| vs. | Black, J.<br>Litkovitz, M.J. |
| WARDEN R. ERDOS, et. al,<br>    Defendants. | **ORDER AND REPORT<br>AND RECOMMENDATION** |

Plaintiff, a prisoner at the Southern Ohio Correctional Facility (SOCF), has filed a pro se civil rights complaint and amended complaint pursuant to 42 U.S.C. § 1983 in this Court. (*See* Doc. 1, 3). Plaintiff's motion to amend the complaint to include additional claims and defendants (Doc. 3) is hereby **GRANTED**. By separate Order, plaintiff has been granted leave to proceed *in forma pauperis*. This matter is before the Court for a *sua sponte* review of the complaint, as amended, to determine whether the complaint or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

This matter is also before the Court on plaintiff's motion for a preliminary injunction and temporary restraining order. (Doc. 2).

    **I. The Complaint**

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma*

*pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

In the complaint, plaintiff claims that he was transferred from the Ohio State Penitentiary to the Southern Ohio Correctional Facility (SOCF) on September 19, 2019. Plaintiff asserts that defendants Warden Erdos, Regional Director Bobby, and ODRC Director Annette Chambers-Smith transferred him "for the purpose of having [his] Extended Restrictive Housing Non-Presumptive Release (EN) privileges and property restricted and for [him] to be physically abused and harassed by SOCF prison officials who have a well-documented reputation for physically abusing prisoners as well as violating prisoners constitutional rights." (Doc. 1-2, Complaint at PageID 52). Plaintiff claims that upon his arrival he was stripped searched and subjected to threats by defendants Erdos and Gallaway.

Plaintiff claims that he was placed in a disciplinary cell, which was video monitored and deprived him of privacy. Plaintiff further contends that the video is viewed by female prison officials. (*Id.* at PageID 53). According to plaintiff, his placement in the disciplinary

cell was completely unjustified in light of his not having had a single incident report for the previous four years.

Plaintiff next complains that defendant Taylor and John Doe Officers 1-5 denied him recreation on September 20, 2019 and September 23, 2019. Lt. Osborne informed plaintiff that he was denied recreation on the first occasion because plaintiff failed to place his clothing on the bars of his cell. On September 23, 2019 plaintiff alleges that Taylor denied him recreation because plaintiff placed his clothing on the bars of his cell. According to plaintiff, Taylor also issued a false conduct report that plaintiff threatened to cut him.

Plaintiff claims that during the subsequent Rules Infraction Board (RIB) hearing on the incident report, defendant Barney found him guilty without considering his testimony (*Id.* at PageID 55). Plaintiff further claims that Defendant Green upheld the guilty finding despite informing plaintiff that he knew Taylor fabricated the incident. (*Id.* at PageID 56).

On or about October 10, 2019, plaintiff claims that Taylor threatened him as he was being escorted to recreation, including threatening that if he continued to file complaints that he would cause plaintiff harm. (*Id.* at PageID 56–57).

On or about October 29, 2019, plaintiff alleges that Erdos transported him to unit J3 and informed him that he would not have any of his EN privileges and property. (*Id.* at PageID 57). Plaintiff complains that every portion of the cell was monitored by a camera, leaving him with no privacy. He further complains that the video is viewed by female officers. (*Id.* at PageID 58).

On October 26, 2019, plaintiff claims that defendant Institutional Inspector Mahlman retaliated against him by placing him on grievance restriction. (*Id.*).

Next, plaintiff claims that on November 7, 2019 and November 8, 2019, defendant Taylor and John Does 1-5 denied him recreation without justification. Taylor allegedly insulted plaintiff and told him "I'm not taking niggers to rec today." (*Id.*). On November 11, 2019, plaintiff claims that Defendant John Doe Officer 1 again denied him recreation, informing plaintiff that "you're wasting your time signing up for rec, you will never go to rec again." (*Id.*). According to plaintiff, he was forced to stop signing up for recreation in order to have the opportunity to shower. Plaintiff claims that he has been denied recreation from November 7, 2019 until the filing of this complaint. (*Id.* at PageID 59).

In the amended complaint, plaintiff seeks to add defendants Layne and Setty based on threats they allegedly made against plaintiff. (Doc. 3 at PageID 79–80).

Plaintiff also claims that defendants King and Taylor deprived him of his due process rights by failing to allow him to call witnesses during RIB hearings or appeal decisions imposing recreation restrictions. (*Id*. at PageID 80–81).

Finally, plaintiff alleges that the institution's mailroom failed to pick up outgoing mail from his unit on March 9, 2020. Plaintiff claims that mailroom officers routinely neglect to collect mail and that defendant Erdos has failed to address the problem. (*Id*. at PageID 81).

Plaintiff seeks declaratory and injunctive relief, as well as monetary damages. (Doc. 1-2, Complaint at PageID 51, 61–62; Doc. 3 at PageID 82).

At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that plaintiff may proceed with this action against defendants Taylor and John Doe Officers 1-5, based on his allegations that these defendants denied him recreation for a prolonged period of time without any penological purpose. *See Patterson v.*

*Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983). However, plaintiff's remaining claims should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

First, the complaint should be dismissed as to all defendants in their official capacities to the extent that plaintiff seeks monetary damages. Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139 (1993); *Edelman v. Jordan*, 415 U.S. 651 (1974). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman*, 415 U.S. at 663; *Ford Motor Company v. Dept. of Treasury*, 323 U.S. 459, 464 (1945). A suit against defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which defendants are agents. *Monell*, 436 U.S. at 690. Thus, actions against state officials in their official capacities are included in this bar. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232 (1974). *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)). Therefore, all of the named defendants are immune from suit in their official capacities to the extent that plaintiff seeks monetary damages.

Plaintiff's claims against defendants Erdos, Bobby, and Annette Chambers-Smith brought in connection with his prison and cell placement should also be dismissed. A prisoner

has "no constitutional right to remain incarcerated at a particular prison or to be held in a specific security classification." *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005). The Supreme Court has held that the Constitution does not give rise to a liberty interest in avoiding transfer from a "low-to maximum-security prison because '[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.'" *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (quoting *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). A liberty interest may be implicated when a transfer or change in classification imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 223 (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). However, the mere fact that an inmate is transferred to another prison or receives an increase in security classification does not amount to an atypical and significant hardship because prisoners have "no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification." *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005); *see also Johnson v. Mohr,* No. 2:15cv86, 2015 WL 1526804, at *2 (S.D. Ohio Apr. 3, 2015) (Graham, J.); *Lawson v. Haddon*, No. 1:09cv551, 2009 WL 2242692, at *4 (W.D. Mich. July 16, 2009) (and cases cited therein). Accordingly, plaintiff's claims regarding his transfer and placement should be dismissed.[1]

Plaintiff's related claim that he was deprived of privacy by virtue of his cell assignment should also be dismissed. As noted above, plaintiff complains that his cells were video monitored, which he claims is viewed by female officers. However, "[a] right of privacy in

---

[1] Plaintiff's conclusory allegation that these defendants conspired to have him transferred also is subject to dismissal. Conspiracy claims "must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). Plaintiff has alleged no facts in support of his conspiracy claim from which the Court can reasonably infer that these defendants conspired to violate plaintiff's constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

7

traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer*, 468 U.S. 517, 527–28 (1984). Because the complaint does not include allegations that his cell was monitored or any search of his person was conducted in an effort to harass him, in an unnecessarily invasive manner, or without penological purpose, his allegations do not rise to the level of a constitutional violation. *See Stoudemire v. Mich. Dept. of Corr.*, 705 F.3d 560, 572 (6th Cir. 2013). *Cf. Kent v. Johnson*, 821 F.2d 1220, 1227–28 (6th Cir. 1987) (finding that the plaintiff stated a claim by alleging that "the female prison guards have allowed themselves unrestricted views of his naked body in the shower, at close range for extended periods of time, to retaliate against, punish and harass him for asserting his right to privacy"). Accordingly, plaintiff's claims based on the video monitoring of his cell should be dismissed.

To the extent that plaintiff seeks to hold Warden Erdos liable based on his supervisory position, this claim is also subject to dismissal. Plaintiff claims that Erdos failed to take actions to curb the behavior of the officers denying him recreation and failing to collect his legal mail.[2] (*See* Doc. 1-2, Complaint at PageID 61; Doc. 3 at PageID 81). However, plaintiff's claim rest on a theory of *respondeat superior*, which does not apply to § 1983 claims and may not serve as a basis for liability. *See Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978); *Hill v. Marshall,* 962 F.2d 1209, 1213 (6th Cir. 1992). "[Section] 1983 liability of

---

[2] To the extent that plaintiff seeks to bring a claim based upon the mailroom officers' failure to pick his mail up on March 9, 2020, this claim is also subject to dismissal. Although prisoners have a First Amendment right to communicate with the outside world by sending and receiving mail, *see Thronburg v. Abbott*, 490 U.S. 401, 407 (1989), "short, non-content based delays in prison mail are not unreasonable and fail to state a constitutional question." *Cotton v. Schotten*, No. 95-4085, 1997 WL 299386, at *1 (6th Cir. June 4, 1997). Plaintiff has also failed to state a viable claim of the denial of access to the courts under the First Amendment, as he has not alleged that he suffered an actual injury in any nonfrivolous legal proceeding. *See Lewis v. Casey*, 518 U.S. 351–53 (1996); *Hadix v. Johnson*, 182 F.3d 400, 405–406 (6th Cir. 1999).

supervisory personnel must be based on more than the right to control employees." *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). Section 1983 liability is premised on active unconstitutional behavior and not a mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The mere fact that defendant Erdos is the Warden at SOCF is not enough to impose liability under section 1983.

Plaintiff also fails to state an actionable claim to the extent that he seeks to hold any defendant liable for the use of threats, slurs, or other insults. Plaintiff fails to state a viable claim under § 1983, which requires a showing of a deprivation of "a right secured by the United States Constitution or a federal statute." *See Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003). It is well-settled that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)); *see also Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (holding that a guard's verbal threat to sexually assault an inmate "was not punishment that violated [the prisoner's] constitutional rights"); *Chilcott v. Erie Cnty. Domestic Relations*, 283 F. App'x 8, 11 (3rd Cir. 2008) (and Sixth, Fifth and Tenth Circuit cases cited therein). Additionally, while prison officials should not use degrading or racist language when interacting with inmates, the use of such language does not rise to the level of a constitutional violation. *See Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *4 (6th Cir. Mar. 31, 2017). A prison official's use of racial slurs and other insults, "although unprofessional and reprehensible, does not rise to the level of constitutional magnitude" and is insufficient to support a constitutional claim for relief. *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (citing *Torres v. Oakland County*, 758 F.2d 147, 152 (6th Cir. 1985)); *see also Ivey*, 832 F.2d at 954. *Cf. Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545-46 (6th Cir. 2004).

Plaintiff's claim that Taylor wrote a false conduct report against him should also be dismissed. Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See, e.g., Reeves v. Mohr*, No. 4:11cv2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (and cases cited therein) (holding that the prisoner failed to state a claim upon which relief may be granted to the extent that he claimed he had "a constitutional right to be free from false accusations"). "A constitutional violation may occur, if as a result of an accusation, the Plaintiff was deprived of a liberty interest without due process." *Reeves, supra*, 2012 WL 275166, at *2 (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). Plaintiff's allegations are insufficient to trigger constitutional concerns in this case because he has not alleged any facts even remotely suggesting that any resulting disciplinary action deprived him of a protected liberty interest.

To the extent that plaintiff may seek relief in connection with the investigation of his complaints or the grievance process, plaintiff fails to state a claim upon which relief may be granted. "There is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007); *see also Daniels v. Lisath*, No. 2:10-cv-968, 2011 WL 2710786, at *2 (S.D. Ohio July 13, 2011). Furthermore, to the extent that plaintiff claims that the grievance procedure failed to produce the correct outcome, this cannot give rise to a § 1983 claim because "[p]rison inmates do not have a constitutionally protected right to a grievance procedure." *Miller v. Haines*, No. 97–3416, 1998 WL 476247, at *1 (6th Cir. Aug.03, 1998) (citations omitted). Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior'" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v.*

*Johnson,* 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). Therefore, plaintiff has failed to state a claim upon which relief may be granted in connection with the investigation of his complaints or the grievance process.

Plaintiff has also failed to state a due process claim against Barney, Green, King, and Taylor in connection with his RIB hearings. Plaintiff fails to allege facts showing that defendants' actions had the effect of altering the term of his imprisonment or imposed restraints which amounted to an "atypical and significant hardship on [plaintiff] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). *See Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995). Plaintiff does not allege facts showing that his RIB proceeding resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or the deprivation of any necessities of life. *Sandin*, 515 U.S. at 486; *Smith v. Corrections Corp. of America*, 5 F. App'x. 443, 444 (6th Cir. 2001) (thirty days of disciplinary segregation does not rise to level of atypical and significant hardship).

Although plaintiff claims that the RIB proceedings before King and Taylor resulted in recreation restrictions,[3] the loss of recreational privileges does not amount to an "atypical and significant hardship" under *Sandin*. *Cf. Payne v. Dretke,* 80 F. App'x 314, 315 (5th Cir. 2003) (per curiam) (involving commissary and recreation restrictions); *Barham v. Duckworth*, No. 95-2913, 1997 WL 686207, at *1 (7th Cir. Oct. 28, 1997) (involving 30-day loss of recreational privileges); *Davis v. Collins*, No. 4:13CV140 CDP, 2013 WL 3457096, at *3 (E.D. Mo. July 9, 2013) (and cases cited therein) ("Under the standards set forth in *Sandin*, the loss of recreation time cannot be said to be atypical, significant deprivations that could encroach upon any liberty

---

3 Plaintiff indicates that King imposed a recreation restriction for seven days. Plaintiff does not indicate the term imposed by Taylor. (*See* Doc. 3 at PageID 80–81).

11

interest."); *Maxwell v. Clarke*, No. 7:12cv00477, 2013 WL 2902833, at *9 (W.D. Va. June 13, 2013) (citing holding in *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997), that six-month period of segregation with "no outside recreation" did not impose an atypical and significant hardship on the prisoner), *aff'd*, 540 F. App'x 196, No. 13-7056, 2013 WL 5405536 (4th Cir. Sept. 27, 2013) (per curiam); *Brown v. LeBlanc*, Civ. Act. No. 09-1477-P, 2013 WL 1947180, at *9 (W.D. La. Mar. 27, 2013) (Report & Recommendation) ("12 weeks loss of yard/recreation privileges does not constitute the type of atypical punishment that presents a significant deprivation which would implicate due process concerns"), *adopted*, 2013 WL 1947175 (W.D. La. May 9, 2013). Accordingly, plaintiff's due process claims should be dismissed for failure to state a claim upon which relief may be granted.

Finally, plaintiff's claim that defendant Mahlman placed him on grievance restriction in retaliation for filing complaints should also be dismissed. "Courts in this circuit have consistently upheld procedures which modify or restrict the ability of prisoners (who have been deemed abusive grievance filers) to file unfettered grievances." *Odom v. Helton*, No. CIV.A. 12-80, 2013 WL 4012889, at *7 (E.D. Ky. Aug. 6, 2013) (citing *Hartsfield v. Mayer*, No. 95-1411, 76 F.3d 378 (table), 1996 WL 43541, at *2 (6th Cir. Feb. 1, 1996) (unpublished order)). Furthermore, "[t]he Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim." *Weatherspoon v. Williams*, No. 2:14-cv-108, 2015 WL 2106401, at *5 (W.D. Mich. May 6, 2015) (citing *Jackson v. Madery*, 158 F. App'x. 656, 660 (6th Cir. 2005)); *Walker v. Michigan Dep't of Corr.*, 128 F. App'x. 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x. 469, 471 (6th Cir. 2001); *Corsetti v. McGinnis*, 24 F. App'x. 238, 241 (6th Cir. 2001)). The right to file institutional grievances without being subject to retaliation extends only to the filing of non-frivolous grievances and "an ordinary person of reasonable firmness would not be deterred from filing non-frivolous

grievances merely because he or she had been placed on modified status." *Walker*, 128 F. App'x. at 445-46. *See also Moore v. Sergent*, 22 F. App'x 472 at *474 (6th Cir. 2001) (upholding a pre-screening process for grievances, noting that "[a]s [the plaintiff] has not been prevented from continuing to file grievances, he has not been subjected to retaliation"). Accordingly, plaintiff's claim that Mahlman placed him on grievance restriction is insufficient to state a claim upon which relief may be granted and should be dismissed.

Accordingly, in sum, plaintiff may proceed with this action against defendants Taylor and John Doe Officers 1-5, based on his allegation that these defendants improperly denied him recreation. However, plaintiff has failed to provide summons and U.S. Marshal forms for service. It is therefore **ORDERED** that plaintiff, **within thirty (30) days** of the date of this Order, submit a completed summons and U.S. Marshal form for service on defendant Taylor. Once the Court receives the requested summons and United States Marshal forms, the Court will order service of process by the United States Marshal. As noted below, plaintiff must file a motion to issue service on the remaining unidentified defendants before service will be issued on these defendants.

Plaintiff's remaining claims should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

## II. Motion for a Preliminary Injunction and Temporary Restraining Order

As noted above, plaintiff has also filed a motion for a preliminary injunction and temporary restraining order. (Doc. 2). Plaintiff seeks an injunction against defendant Erdos based on threats made against plaintiff and Erdos's alleged failure to "curb the threatening behavior of his underlings." (*Id*. at PageID 71).

In determining whether to issue a preliminary injunction/temporary restraining order, this Court must balance the following factors:

1. Whether the party seeking the injunction has shown a "strong" likelihood of success on the merits;

2. Whether the party seeking the injunction will suffer irreparable harm absent the injunction;

3. Whether an injunction will cause others to suffer substantial harm; and

4. Whether the public interest would be served by a preliminary injunction.

*Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689-90 (6th Cir. 2014); *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). The four factors are not prerequisites but must be balanced as part of a decision to grant or deny injunctive relief. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). "[A] district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003), *abrogated on other gds. by Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

"The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits." *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 848-49 (6th Cir. 2017) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). When a prisoner requests an order enjoining a state prison official, the Court must "proceed with caution and due deference to the unique nature of the prison setting." *White v. Corr. Med. Servs.*, No. 1:08-cv-277, 2009 WL 529082, at *2 (W.D. Mich. Mar. 2, 2009) (citing *Kendrick v. Bland*, 740 F.2d 432, 438 n. 3 (6th Cir. 1984); *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995)). In deciding if a preliminary injunction is warranted, the Court must "weigh carefully the interests on both

sides." *Lang v. Thompson*, No. 5:10-cv-379-HRW, 2010 WL 4962933, at *4 (E.D. Ky. Nov. 30, 2010) (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)). A preliminary injunction is an extraordinary remedy that should only be granted "upon a clear showing that the plaintiff is entitled to such relief." *S. Glazer's Distributors of Ohio, LLC*, 860 F.3d at 849 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also Overstreet*, 305 F.3d at 573.

Plaintiff has not alleged facts sufficient to warrant a temporary restraining order/ preliminary injunction in this case. Plaintiff has made no attempt to apply the above factors to his situation. The motion includes additional allegations of verbal harassment and threats allegedly made against him. As noted above, verbal harassment or idle threats are insufficient to support a claim under § 1983. *See Wingo*, 499 F. App'x at 455. Accordingly, plaintiff has not established a substantial likelihood of success on the merits of his constitutional claims or that he will suffer irreparable harm absent a preliminary injunction. A preliminary injunction is also not warranted in this case because the purpose of a preliminary injunction—to preserve the status quo until a trial on the merits can be held, *see Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991)—would not be served. The present status quo in this case is, according to plaintiff, that he has suffered numerous violations of his constitutional rights. The remedy plaintiff presently seeks is more than an injunction maintaining the status quo; he seeks an Order from this Court requiring defendants to affirmatively correct constitutional deficiencies yet to be proven. Such affirmative relief is generally beyond the scope and purpose of preliminary injunctive relief. *See id*.

Accordingly, it is **RECOMMENDED** that plaintiff's motion for preliminary injunction/temporary restraining order (Doc. 2) be **DENIED.**

**IT IS THEREFORE RECOMMENDED THAT:**

1. The complaint, as amended, be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), with the exception of plaintiff's claim that defendants Taylor and John Doe Officers 1-5 improperly denied him recreation.

2. Plaintiff's motion for a preliminary injunction and temporary restraining order (Doc. 2) be **DENIED.**

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's motion to amend (Doc. 3) is **GRANTED.**

2. That plaintiff submit a completed summons and U.S. Marshal form for service on defendant Taylor **within thirty (30) days** of the date of this Order. Once the Court receives the requested summons and United States Marshal forms, the Court will order service of process by the United States Marshal.

Before service may be issued upon any remaining John Doe defendants, plaintiff must file a motion to issue service setting forth the identities of the unidentified defendants. Plaintiff is therefore **ORDERED** to file a motion to issue service, including United States Marshal and summons forms, if and when plaintiff discovers the identity of the unnamed defendants through discovery. Plaintiff is advised that no service will be issued on the unnamed defendants unless plaintiff complies with this Order.

3. Plaintiff shall serve upon defendants or, if appearance has been entered by counsel, upon defendants' attorney, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendants or defendants' counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

4. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

Date: 3/23/20

*s/Karen L. Litkovitz*
Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| CORNELIUS L. HARRIS,<br>    Plaintiff, | Case No. 1:20-cv-120 |
| vs. | Black, J.<br>Litkovitz, M.J. |
| WARDEN R. ERDOS, et. al,<br>    Defendants. | |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).